UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                  :

UNITED STATES OF AMERICA

                                  :

      - v. -                        No. S9 10 Cr. 336-006 (LAK)

                                  :

NELSON BURTNICK

                                  :

                  Defendant.     Sentencing Date:  09/16/2015

                                  :

---------------------------------------------------------------- x

## DEFENDANT NELSON BURTNICK'S
## <u>MEMORANDUM IN AID OF SENTENCING</u>

Philip T. Inglima
Glen G. McGorty

CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 624-2795
pinglima@crowell.com

*Counsel for Defendant Nelson Burtnick*

September 4, 2015

## TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 2

    A.    Procedural Background............................................................................... 2

    B.    Factual Background .................................................................................... 3

        1.    Personal History.............................................................................. 3

        2.    Offense Conduct ............................................................................. 5

            a.    PokerStars ........................................................................... 5

            b.    Full Tilt Poker .................................................................... 6

        3.    Post-Offense Personal History........................................................ 7

        4.    Surrender, Confinement to this District, and Cooperation ........................ 9

        5.    Current Personal Circumstances .................................................... 10

III.    SENTENCING CONSIDERATIONS.................................................................. 11

    A.    The Presentence Investigation Report ...................................................... 11

    B.    18 U.S.C. § 3553 Analysis....................................................................... 11

        1.    Circumstances of the Offense and Personal History of Nelson Burtnick. 12

        2.    Seriousness of the Offense, Need for Just Punishment, and Avoidance of Unwarranted Sentencing Disparities............................................. 14

        3.    Need for General and Specific Deterrence ..................................... 15

        4.    Need for Rehabilitation................................................................. 16

    C.    Potential Financial Penalties.................................................................... 16

    D.    U.S.S.G. § 5K1.1 Substantial Assistance Departure.............................. 17

IV.     CONCLUSION ...................................................................................................... 18

## I.    <u>INTRODUCTION</u>

Defendant Nelson Burtnick, through counsel, respectfully submits this memorandum in anticipation of his September 16, 2015, sentencing hearing.  In 2012, Mr. Burtnick left his home and family in Ireland and voluntarily surrendered in New York in order to take responsibility for his part in internet gambling offenses.  He pled guilty, fully cooperated United States authorities, and was granted leave by the Court to return to his family more than four months later.  His conduct over the ensuing three years has earned him credit from the Probation Office for accepting responsibility for his offense conduct, and a sentencing departure motion from the United States based on his substantial assistance in the investigation and prosecution of others.  Perhaps most important, in the four and a half years since he curtailed his offense conduct, he has engaged in a consistent and conscientious effort to remediate the effects of his actions, and to re-establish himself as a law-abiding and contributing member of society and a responsible husband and father.  We respectfully submit that a sentence of time-served would be appropriate in Nelson Burtnick's case.

In support of this request, this memorandum canvasses the relevant procedural and factual background of this matter, and explores Mr. Burtnick's personal history before and after the offense with the benefit of insights provided through letters to the Court from Mr. Burtnick as well as members of his family, close friends, his pastor, and his current employer.  It then addresses the calculation of the total offense level in this case pursuant to the advisory U.S. Sentencing Guidelines ("USSG") as set forth in the Presentence Investigation Report ("PSR") prepared by the US Probation Office.  Finally, this submission evaluates the range of statutory factors relevant to determination of a reasonable and appropriate sentence for Mr. Burtnick.

## II.    BACKGROUND

### A.    Procedural Background

On March 10, 2011, a grand jury sitting in this federal district returned a multi-count indictment charging eleven defendants, including Defendant Nelson Burtnick, with various criminal charges, including conspiracy, bank fraud, money laundering, and violation of the Uniform Internet Gambling Enforcement Act, 31 U.S.C. §5563 ("UIGEA"). The charges initially were filed under seal, and then disclosed a month later. On July 31, 2012, Mr. Burtnick voluntarily surrendered to authorities in the United States, appeared in this court, and was released on a secured bond.

On September 19, 2012, Mr. Burtnick appeared before U.S. Magistrate Judge Gabriel H. Gorenstein of this court and, pursuant to his September 14, 2012 plea and cooperation agreement, pled guilty to a three-count Superseding Information charging him with: one count of conspiracy to accept funds in connection with unlawful internet gambling, to commit bank fraud, and to commit money laundering, in violation of 18 U.S.C. § 371; and two counts of accepting funds in connection with unlawful internet gambling, in violation of 31 U.S.C. § 5363. At the government's request, his sentencing was continued indefinitely in view of the government's ongoing prosecution efforts, with which Mr. Burtnick cooperated fully.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████, the parties stipulated to terms for his enlarged release, and the Court ordered on December 6, 2012 that Mr. Burtnick could post additional security in cash, and travel back to Ireland. Shortly thereafter, Mr. Burtnick left the Southern District, pending sentencing.

2

### B.    Factual Background

The charges in this case all arise from the operation of internet poker sites by three companies operating outside the United States and doing business with US online customers through the use of various machinations and deceptions that made it possible to process the funds involved in these gambling transactions through US financial institutions.  Nelson Burtnick entered employment with these businesses and participated in their illegal activities at a turning point in his business career.  His activities and decisions are best understood in the context of his life story, both before and after this regrettable chapter in it.

### 1.    Personal History

Nelson Burtnick was born and raised in British Columbia, and lived in Canada until he moved abroad for work at age 36.  His parents and sister formed with him a tight and loving family, and they support him to this day, as attested by the attached letters from his mother, Patricia Burtnick, and his wife, Sheri Burtnick.  While not wealthy, the family lived comfortably with both parents working, and Nelson learning from an early age the importance of hard work.

Mr. Burtnick's first job was at a ▮▮▮▮▮▮ restaurant when he was 15.  By age 18, he moved on to the ▮▮▮▮▮ restaurant chain, where he progressed through the ranks and at a young age was promoted to General Manager, overseeing a staff of 70 and sales of $2 million. From there he moved up to broader responsibilities at corporate headquarters.  During that time, he also sought to advance beyond his high school education by taking a three year Marketing and Sales Management diploma course offered by the University of British Columbia.  After successfully completing this challenging program as the youngest student in the class, while holding down his job, Mr. Burtnick decided to light out on his own, and open his own restaurant.

The best thing to happen to Mr. Burtnick occurred during his years with ██████████: while they both worked in a ██████████ restaurant, Nelson met Sheri Crowder, and six years later they married.  Sheri was at Nelson's side as he undertook his higher education and held down his ██████████ management job, and she supported his decision and efforts in 1995, when he borrowed money from his parents and opened his own restaurant, Burger Heaven, in Vancouver.

The internet was transforming business in those days, and its possibilities commanded Nelson's attention.  Even as he and a friend launched Burger Heaven, Nelson decided also to start a website and software design company.  Through this exploration, he gained significant experience in software design, product management, e-commerce, and payment processing.  Unfortunately, he also overloaded himself, and lost focus on the restaurant at a time when his business partner was struggling with personal problems.  The combined effect was disastrous.  Burger Heaven failed, Nelson accrued substantial debt, and he ultimately had to close down both businesses and contemplate starting over.

During these same years, Nelson and Sheri were blessed with the birth of their daughter, ██████ (in ██████), and their son, ██████ (in ██████).  Mounting debt and uncertain work prospects daunted the young couple, and Nelson sought an opportunity to employ the skills he had developed in e-commerce and payment processing.  As Nelson explains in his letter, "The financial opportunity to consult for Pokerstars and relocate to the Isle of Man was a lifeboat, and at the time it seemed like an ideal opportunity both to apply my distinct business skills in an emerging industry and a path to financial security for my family."  (August 5, 2015 letter to US Probation Officer Lyvia Ramos from Defendant Nelson Burtnick, attached as Ex. 1, at p. 5.)  Instead, it proved to be a tragic mistake.  As Nelson put it, "We felt that we would be able to go

4

to the Isle of Man and be able to pay debt, save funds and come home with a down payment on a house." *Id.* At that time, internet poker was virtually unrestricted in many countries, the company operated globally, and Nelson ignored the risks associated with engaging the critical US market in favor of taking a job that seemed too good to be true.

### 2. Offense Conduct

The PSR describes some general facts relevant to the online poker conspiracies, and provides a lengthy excerpt from Mr. Burtnick's own account of how he became entangled in this web of deceptions spun by the founders and owners of PokerStars and Full Tilt Poker. In view of Mr. Burtnick's ongoing cooperation, we rely primarily upon and incorporate by reference his explanation of details associated with his role at each company, set forth in his August 5, 2015 letter. Some brief context on each association follows.

### a. PokerStars

From late December 2006 until March 2007, Mr. Burtnick was employed as a consultant to PokerStars. ███████████████████████████████████████████ ████████████████████████ In March 2007, he was offered a permanent role in the company as a Product Manager and the Burtnick's all moved to the Isle of Man. ██████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

In March 2008, PokerStars's prior Director of Payments left the company, and Nelson was promoted to that position. ████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████.

### b.    Full Tilt Poker

From September 2008 to February 2009, Mr. Burtnick was unemployed, still living in the Isle of Man with his young family, and searching for employment. His search led him to Pocket Kings Ltd. Ireland, which owned and operated the Full Tilt Poker gambling website. In February 2009, Nelson accepted a position heading payment processing for Full Tilt Poker, and he and Sheri relocated their young family to Ireland.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████

6

At both PokerStars and Full Tilt Poker, Nelson Burtnick was an employee, not an owner, officer, or director. He had no equity, and no "cut" of the net profits. ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ He admits this fact, and has sought to address it as best he can.

### 3.    Post-Offense Personal History

The offense conduct ended on April 15, 2011, when the Court unsealed the indictment and several initial arrests were made. Learning this news in Ireland, Mr. Burtnick felt a jumble of emotions, and all of it had a surreal quality.

While the US payment processing ended immediately, Full Tilt Poker continued operating in many other jurisdictions without constraints. For a variety of reasons, including a genuine desire to ensure the full satisfaction of US accounts and a need to provide for his wife and eight-year-old son and ten-year-old daughter, Mr. Burtnick remained in his position. He engaged counsel and reached out to US authorities concerning the charges he faced. During those months, Mr. Burtnick also assisted the company in readying for a transaction that would convey Full Tilt's assets and operations to the successor to PokerStars, for purposes of resolving asset freezes and forfeitures in the US, with the approval and supervision of the Justice Department. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████

One of the ironies of these facts is that the time in Ireland was so very good for the Burtnick's as a family, even as Nelson's terrible decision to work with Full Tilt Poker was ripening to a full-blown personal disaster. Sheri and the children adjusted well to their new home, becoming deeply involved in the local school and parish communities. Sheri volunteered at local charities, and Nelson coached little league for both kids. The whole family became members of Christ Church Bray, and in 2010 Nelson was appointed Rectors Warden of the church.

This last connection would be an extremely important one for Nelson, as it provided him a support network that proved invaluable after the charges were filed. As Reverend Baden Stanley attests, long before this case arose, he and Nelson had developed a friendship that led them on long walks and discussions of faith, family, and individual identity. Those discussions took on a more urgent quality after the indictment, and afforded Nelson a means of getting past the anger, denial, dismay, and confusion he felt at the predicament in which he had landed himself:

> I have walked miles with Nelson as he has processed this whole situation. I can assure you that he deeply regrets the choices he has made and has accepted responsibility for his conduct, as is clear from his agreement with the DOJ. This has been a devastating experience for Nelson and his family. . . . He has discovered new depths of courage and character in these past four years, he has learned difficult life lessons and I know, hand on heart, that God has helped him grow as a man through these difficult times.

30 July Letter of Rev. Baden Stanley (Ex. 2 at p. 10).

This growth and recommitment to his personal character has enabled Nelson Burtnick to take the difficult steps required to atone for his misconduct. Those steps began with his surrender to federal agents.

9

### 4.    Surrender, Confinement to this District, and Cooperation

In early July 2012, Mr. Burtnick notified the government that he would surrender to authorities without a resolved plea deal.  He flew to the US from Ireland on July 31, 2012, was met by federal agents at Newark Airport, ███████████████████████████████████

████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

and thus spent more than four months separated from his wife and young children, unemployed,

███████████████████████████████

9

### 5.    Current Personal Circumstances

When Nelson Burtnick returned to Ireland in mid-December 2012, he was without a job or income, facing tremendous jeopardy, and uncertain of when and how this catastrophic episode in his life would conclude.  He did the only thing he could do:  he focused on the needs of his family first, and put aside concern for his own ultimate fate.  For months, he explored employment possibilities in Ireland, in Canada, and elsewhere.  The pending criminal charges obviously presented a considerable hurdle to this pursuit, but it was his predominantly positive personal history that eventually provided relief.

In August 2013, Nelson accepted a position with Inatec AG, a company that specializes in online payments, risk management, and software development.  Managing Director Rüdiger Trautmann knew Nelson from his days at Full Tilt Poker, when Inatec provided European payment processing solutions to the company, and had a high regard for Nelson.  He placed trust in the Nelson Burtnick he had come to know, and he has written to the Court about how well that confidence has been rewarded.  Today, Mr. Burtnick acts as Chief Operating Officer of Inatec, and Mr. Trautmann describes him as "a dedicated, trustworthy and hardworking employee."  (Ex. 2 at p. 14.)

The Inatec opportunity permitted Mr. Burtnick to re-establish himself in the business community.  It required the Burtnick family to move to Germany, though none of them had any German language ability.  That fact has made the move a great challenge, especially given the friendships and community they left behind in Ireland, and the balance of their family who remain remote to them in Canada.  Together, they have made this move a good thing for their family, and they are better for it – and that has made Nelson Burtnick stronger personally.

### III.    SENTENCING CONSIDERATIONS

#### A.    The Presentence Investigation Report

Mr. Burtnick and his counsel have reviewed the Presentence Investigation Report and provided comments to the US Probation Office.  The PSR accurately sets forth the guidelines Total Offense Level of 10 (PSR, ¶79) and Criminal History Category of I, based on Mr. Burtnick's complete lack of prior criminal charges or convictions (PSR, ¶83).  The resulting sentencing range is accurately identified as 6 to 12 months, in Zone B (PSR, ¶107), making Mr. Burtnick eligible for probation (PSR, ¶112).  The PSR also correctly notes a USSG fine recommendation of $2,000 (PSR, ¶117).

Although the federal sentencing guidelines provide advisory guidance to the Court and do not bind its discretion, *see United States v. Booker*, 543 U.S. 220 (2005), the Court's analysis begins with the guidelines assessment.  In this case, the guidelines place no significant limitation on the Court's ability to fashion an appropriate sentence in its discretion, including a sentence of time-served.

#### B.    18 U.S.C. § 3553 Analysis

District courts are directed under the authority of 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary," to comply with the traditional sentencing objectives recited in that section.  Section 3553 requires the court, in determining the particular sentence to be imposed, to consider (in pertinent part):

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed

    (a)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (b)    to afford adequate deterrence to criminal conduct;

11

      (c)      to protect the public from further crimes of the defendant; and

      (d)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)      the kinds of sentences available;

(4)      the kinds of sentence and the sentencing range established for –

      (a)      the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines

(5)      any pertinent [US Sentencing Commission] policy statement;

(6)      the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)      the need to provide restitution to any victims of the offense.

Here, the Section 3553 factors strongly support a sentence of time-served. These factors and considerations can best be grouped as follows.

### 1.      Circumstances of the Offense and Personal History of Nelson Burtnick

The offenses at issue here are serious in nature, but their context is important. The businesses themselves engaged in a broad range of lawful activities, apart from the US-facing illegal gambling conduct. The criminal schemes existed before Mr. Burtnick entered either company's employ and, in the case of PokerStars, continued independently after his departure. There are no identified losses from the offenses, though their imposition on the government, the Court, and others is real.

Mr. Burtnick's specific relation to the offenses is quite important. He was not a founder or equity owner of either business, and was not the architect of this scheme. When the government brought charges, Mr. Burtnick assisted Full Tilt Poker in advancing a resolution of account balances, and supported the merger of the legitimate business into another entity, with

12

the government's approval.  He did not require the government to engage extradition process, and did not assert his right to challenge it, and did not seek to litigate the propriety of the charges filed against him in this court.  Instead, he left his home in Ireland, surrendered in the US, and pled guilty to charges that accurately reflect his own conduct.

This behavior is consistent with the true character of Nelson Burtnick, and reflects how isolated and aberrational his offense conduct is against the full portrait of his life.  That view is supported by the eloquent letters submitted by his family, friends, and colleagues.  Attached as Exhibit 2 are the following letters of support:

- July 21, 2015 Letter of Patricia Burtnick, Nelson's mother
- July 31, 2015 Letter of Sheri Burtnick, Nelson's wife
- July 24, 2015 Letter of Joe S. Crowder, Nelson's father-in-law
- July 30, 2015 Letter of Rev. Baden Stanley, Nelson's friend and former pastor
- July 23, 2015 Letter of Leslie Stroh, Nelson's friend
- July 20, 2015 Letter of William R. Barber, Nelson's friend
- 15 July 2015 Letter of Rüdiger Trautmann, Nelson's employer
- 24 July 2015 Letter of Anja Schneider, Nelson's friend and colleague
- 22 July 2015 Letter of Neil Ward, Nelson's friend
- 27 July 2015 Letter of Julian Bennett, Nelson's friend and former colleague & neighbor
- Undated Letter of Trent Booth, Nelson's cousin
- Undated Letter of Jennifer McGregor, Nelson's friend

These twelve letters depict a man who has done great acts of kindness for family, friends, colleagues, and strangers alike.  A man who is devoted to his family, and gentle and loving towards his wife and children.  A man who always has lived the coda of "being there" for family and friends, and who felt great pain and shame when his conduct in this matter resulted in his being unable to fulfill that most basic principle for the first time in his life.  A man who has been humiliated, challenged, and chastened by the journey this life passage has presented to him.

13

Nelson Burtnick is all of those things.  He admits that desperation and greed led him to make the mistakes that resulted in his offenses, and that remorse, humility, and contrition have helped him to chart a way beyond them.  He has demonstrated an embrace of responsibility, and a capacity for growth.

For such a man, friends and relatives from the United States are willing to post their property and pledge a bond to secure his release from the Court.  For such a man, an employer and a colleague in a highly regulated industry are willing to afford a second chance, and then marvel at how he has become a hawk for compliance and transparency.  For such a man, friends will cross an ocean to provide support at sentencing, even when he asks them to stay home with their own families.

### 2.    Seriousness of the Offense, Need for Just Punishment, and Avoidance of Unwarranted Sentencing Disparities

As discussed above, Nelson Burtnick knows his offenses are serious.  He knows why the US government brought this highly publicized prosecution.  He respects the gravity of the charges and jeopardy he faces.

For those reasons, he confronted his guilt, ████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

In assessing the need for retribution or just punishment, it also would be proper to consider the toll this series of events has taken on the Burtnick family.  The letters depict the emotional and psychic pain Cheri and the Burtnick children felt at Nelson's long and uncertain time restricted to New York after his surrender, the health effects it has caused his parents, and

14

the deep shame, guilt, and pain Nelson Burtnick has felt for causing his parents and his own family to endure that trauma.

Here, just punishment must acknowledge all these circumstances.  A defendant who waives extradition rights, appears voluntarily from abroad, contests nothing in his case, and pleads guilty to the full nature of his offense conduct helps the government and the Court establish the proper enforcement of the law.  A defendant who further cooperates in the prosecution of others merits even greater consideration.

On that basis, a sentence of time-served would compare favorably with sentences already handed down by this Court in this prosecution.  Mr. Burtnick already has been restricted to this district for more than four months in conditions similar to home confinement – except that he was three thousand miles from his home and family.  He already has been under supervision of the Court's officers for more than three years, without a single deviation from rule or requirement.  He is eligible under the guidelines for probation, and such a sentence will promote respect for the enforcement of the laws here at issue.

### 3.    Need for General and Specific Deterrence

Nelson Burtnick has expressed to the Court in emotional terms the impact this experience has had upon his life and his mentality.  There is no risk that he again will fall to such a tragic plight by his own misconduct.  As Mr. Burtnick stated in his August 5 letter:

> The amount of stress, anxiety and uncertainty I have caused [my family] is inexcusable.  This is by far the greatest regret of my life. . . . Being in New York for 4 months after my surrender, not permitted to travel due to my bond terms, while my family was in Ireland shook me to my core.  No one can truly understand the value of his or her personal freedom until it is taken away.

(Ex. 1 at p. 4, 6.)  That truth is established not just by Mr. Burtnick's words, but by the accounts of every person who wrote in support of him.  They have heard it in his words these past three

15

years, and they have seen it in his conduct as a father, husband, and businessman since the time of this offense four and a half years ago.

The government has achieved a great deal of general deterrent effect through this prosecution ██████████████████████████████ This case has garnered wide-spread attention in the world community and in the financial industry, as Mr. Trautmann and Ms. Schneider attest.  It already has succeeded in that regard, and a demonstration of proper reward to those who admit guilt █████████████████████ promotes more behavior of like kind.

### 4.    Need for Rehabilitation

Nelson Burtnick has not completed the journey this case requires of him, but he has sincerely and fully embraced the spirit and actions required of one who seeks to make amends. The letters before the Court, especially Mr. Burtnick's own, manifest this fact.  From here, Mr. Burtnick must continue to live a law-abiding life day after day, and must continue earning back the trust and respect of the government and the Court while earning the means of both supporting his family and satisfying his remaining financial obligations to the government in forfeiture.

### C.    Potential Financial Penalties

The PSR accurately notes the guidelines advisory fine amount in this case as $2,000.  As noted in the PSR, it is undisputed that there are no identified losses in this case (PSR, ¶56), thus eliminating any need for restitution.

Pursuant to his plea and cooperation agreement, Mr. Burtnick acknowledged the application of forfeiture provisions, as well, and agreed to forfeit to the United States all claims for unpaid salary, which at the time of the plea negotiation the defense documented to the government as being in excess of $200,000.  At that time, there were transactions and civil proceedings underway concerning the disposition of assets for Full Tilt Poker and its holding

16

companies, and Mr. Burtnick honored this agreement and refrained from asserting any claim, notwithstanding the advice of Irish counsel as to his rights under that nation's wage and salary laws. Thus, Mr. Burtnick already has waived and forfeited all right and interest to those amounts in favor of the United States. The government and the defense have undertaken discussions to resolve an appropriate amount of further forfeiture payment from Mr. Burtnick, and anticipate submitting a stipulation to the Court in advance of the sentencing hearing.

**D.    U.S.S.G. § 5K1.1 Substantial Assistance Departure**

IV.    **CONCLUSION**

Mr. Burtnick took the two most significant steps possible to address his participation in the crimes committed at PokerStars and Full Tilt Poker:  he embraced responsibility for his wrongful actions and omissions, ███████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ For these reasons, the further points set forth above, and those reasons cited by the government in its motion for a downward departure in recognition of Mr. Burtnick's substantial assistance in the investigation and prosecution of others, we respectfully submit that a sentence of time-served, together with no more than one year of supervised release, and financial penalties consistent with those described above, would be sufficient but not greater than necessary to achieve the objectives of 18 U.S.C. 3553, and thus would be in the interests of justice.

Respectfully submitted,

<u>            /s/                        </u>
Philip T. Inglima
Glen G. McGorty

CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 624-2795
pinglima@crowell.com

*Counsel for Defendant Nelson Burtnick*

Dated:  September 4, 2015