IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA, | Case No. 10-cr-00336-BCM-4 |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| SCOTT TOM, | |
| Defendant. | Date:   September 28, 2017<br>Time:   10:00 a.m. |

## TABLE OF CONTENTS

                                                                                              **Page**

I.    INTRODUCTION ............................................................................................................1

II.   THE PLEA AGREEMENT ............................................................................................1

III.  THE PRESENTENCE REPORT....................................................................................2

IV.  THE NATURE OF THE DEFENDANT'S VIOLATION.......................................2

V.   THE APPROPRIATE SENTENCE...............................................................................3

VI.  RESTITUTION/FORFEITURE/FINE..................................................................7

VII. CONCLUSION..............................................................................................................8

NOW COMES the Defendant Scott Tom and files this memorandum relating to his sentencing in this cause presently scheduled for September 28, 2017, at the hour of 10:00 a.m. before the Honorable Barbara C. Moses, United States Magistrate Judge.

## I.   INTRODUCTION

In or about March of 2011, the Defendant Scott Tom was charged in three counts of a multi-count indictment with an unlawful Internet Gaming Enforcement Act and conspiracy violation (18 U.S.C. § 371 and 31 U.S.C. §§ 5363 and 5366) and with money laundering conspiracy (18 US.C. § 1956(h)).  The indictment also contained forfeiture allegations.  On February 23, 2017, the defendant, who is not a U.S. citizen, voluntarily returned to the United States following extended efforts by defense counsel and the United States Attorney's office to avoid immigration related issues which potentially adversely impact the defendant in various unnecessary ways.  Also, on February 23, 2017, the defendant appeared before U.S. District Court Judge Lewis A. Kaplan and was released on a $100,000 bond which was immediately posted.  On May 31, 2017, the defendant appeared before Magistrate Judge Barbara C. Moses, and entered a guilty plea to a one-count misdemeanor Information charging him with being an accessory after the fact to the providing of gaming information in violation of 18 U.S.C. § 3.  A presentence report was ordered by the court and the defendant was interviewed by the U.S. Probation Office on June 27, 2017.  Sentencing was set for September 28, 2017, at the hour of 10:00 a.m.

## II.   THE PLEA AGREEMENT

The Scott Tom guilty plea was entered pursuant to a written agreement in a letter dated May 26, 2017, which letter has previously been filed with the court. The written agreement contains a Sentencing Guidelines offense level of 4, a Criminal History Category I, and a fine range of from $250 to $5,000.  While the

1

Guidelines range is a stipulated one, the agreement allows for a U.S.C. § 3553(a) variance as may be appropriate. Additionally, the agreement calls for a $300,000 forfeiture and appeal waivers consistent with agreement provisions.

### III.   THE PRESENTENCE REPORT

The presentence report for Scott Tom, consistent with the plea agreement, calculates a Sentencing Guidelines offense level of 4 pursuant to Guidelines §§ 2X3.1.1(a)(1) and 2E3.1.1(a) (accessory after the fact to dissemination of gambling information violation), and § 3E1.1 (acceptance of responsibility). The report summarizes the defendant's incredibly difficult and completely dysfunctional childhood, his employment history including working his way through high school and college, and his involvement in the violation to which he has entered his plea. The report recommends a sentence of one year of supervised release which would be unsupervised should he serve it outside the United States.

### IV.   THE NATURE OF THE DEFENDANT'S VIOLATION

The defendant, following his graduation from college at the age of 21, became employed at a company based in Costa Rica called Absolute Poker. His primary responsibility at the company was as one of some 90 individuals involved in product development. The company, Absolute Poker, had poker customers throughout the world. The defendant's initial employment at the company was based on his reviewing opinions from leading U.S. gaming attorneys and related circumstances (such as the company's license in Costa Rica and the legal analysis of other business organizations which explored acquisitions and public offerings of Absolute Poker) indicating that the company was operating in conformance with American law. In 2007, however, the United States passed the Uniform Internet Enforcement Gaming Act ("UIEGA") which caused the defendant to question whether or not Absolute Poker was operating in violation of U.S. gambling laws. Because of these concerns, Scott Tom resigned from Absolute Poker in 2007.

2

Despite his resignation, however, Mr. Tom, on occasion, subsequently provided minor assistance to the company in terms of consulting advice relating to product development, in order to assist the company in its continued operation.  Mr. Tom, subsequent to his resignation from the company, became involved in farming and selling teak trees in Panama and subsequently moved to Antigua where he has been employed in a non-gaming capacity in a completely legitimate fashion as detailed below in this memorandum.

## V.     THE APPROPRIATE SENTENCE

Of the 11 defendants named in the original indictment, the Defendant Scott Tom may well have been the least involved.  The original indictment sets forth UIEGA violations beginning in October of 2007, and the defendant was the sole participant to resign from Absolute Poker (or from either of the other two poker companies named in the indictment) upon the passage of the UIEGA.  Every other defendant remained fully active until the time of the indictment in March of 2011.  The defendant has had no other criminal history, is college educated with a degree from the University of Montana, and has avoided the gaming industry since his 2007 departure from Absolute Poker.  For the past six plus years he has been residing and employed in Antigua where he began running a tourist attraction, and assisting the Government of Antigua in tourist promotion generally.  He has turned down a number of potentially lucrative opportunities in the legitimate gaming industry even including assisting the Antiguan Government in attracting gaming operations to that country.  Included in attached Exhibit "C" is correspondence from the former Antiguan Prime Minister Winston B. Spencer, noting Mr. Tom's assistance to that country's government, his philanthropy, and his law-abiding activities in Antigua generally.

It should be noted that Mr. Tom left Antigua, a jurisdiction from which he could not be extradited, where he was legitimately employed, owns a home, and is

3

engaged to be married, in order to voluntarily return to the United States (where he is not a citizen) to deal with the instant litigation. He has been allowed into the United States for a period of one year to dispose of his case and has been informed by Homeland Security that he must depart the country subsequent to being sentenced by the court.

As an aside, it is noted that Paul Tate, the last defendant sentenced in this case, whose offense level was an eight (four points higher than that of Mr. Tom) and who also voluntarily returned to the United States, was recently sentenced to a term of probation by the Honorable Lewis Kaplan. Mr. Tate, a mid-level manager who, like the co-defendants other than Scott Tom, did not leave the involved poker companies upon the passage of UIEGA but remained involved and received illegal proceeds until April of 2011 (the date of the superseding indictment). Correspondingly, it is noted that while accurate case comparisons are far from an exact science, and that circumstances are never identical, a great number of gaming sentences have resulted in probation sentences even where, unlike here, literal Guidelines offense level calculations may have dictated otherwise. For example:

1. In <u>United States v. Michael J. Reisch</u>, Case No. 10-cr-40125, the defendant, who was identified as the largest bookmaker in the Dakotas with hundreds of customers, was sentenced on March 4, 2011, in the District of South Dakota, to three years' probation (one year to be served in home detention) for running a bookmaking business in violation of 18 U.S.C. § 1084 – a felony. Mr. Reisch's bookmaking activities, as the owner and operator of an organized bookmaking business were, in fact, far more extensive in scope than the activities of Defendant Scott Tom.

2. On or about December 16, 2010, Anurag Dikshit, the founder of Party Poker (known as the largest online poker room in the world), was sentenced by the Honorable Jed S. Rakoff in the Southern District of New York (Case No.

08-cr-01265) to one year of probation for felonious gaming activities. Dikshit's company, correspondingly, entered into a non-prosecutorial agreement despite Mr. Dikshit admitting to deceptive credit card processor activities in violation of American law and in excess of $100 million.

3. On or about July 18, 2007, the processing/money transfer company known as Neteller, which was handling hundreds of millions of dollars in offshore sportsbook wagers which violated U.S. law, entered into a non-prosecution agreement in the Southern District of New York. This agreement resulted in neither the company nor any of its personnel being criminally charged in exchange for the forfeiture of its bank accounts.

4. On September 15, 2010, in the Southern District of New York, Douglas Rennick, a Canadian illegal gambling payment processor for offshore sportsbooks who was indicted for money laundering and bank fraud, was sentenced by the Honorable Sidney Stein in Manhattan in Case No. 09-cr-00752 to six months' probation for his role in the felonious processing of some $350 million in transactions on behalf of offshore gaming sites for U.S. customers.

5. During September of 2010, in the Southern District of New York, the Government entered into a non-prosecution agreement with a company known as Sportingbet which engaged in large scale illegal betting activity from U.S. customers. Sportingbet was the owner of Paradise Poker and there were no charges brought against either the company or its operating individuals in exchange for forfeitures totaling $33 million.

6. On or about June 5, 2008, in the Southern District of New York, Entertainment Systems Inc./Citadel was allowed to enter into a deferred prosecution agreement as to both the company and its operating personnel in exchange for the forfeiture of $9 million in funds seized as a result of its

5

processing of wagering-related funds for U.S. customers from offshore sportsbooks.

7. In <u>United States v. E. Brian Janus</u>, Case No. 03-cr-00142-DC in the Southern District of New York, the defendant who was one of the managers of a multi-million-dollar offshore sportsbook was sentenced for his felony gambling conviction to time served by the Honorable Dennie Chen consisting of two hours which Mr. Janus spent in custody in the U.S. Marshal's Office during the processing following his arrest.

8. In or about October 4, 2012, in <u>United States v. Jessica Davis</u>, Case No. 12-cr-00049, Ms. Davis, who managed the financial affairs of World Wide Telesports, known as WWTS Sports (an Antigua-based sportsbook) which did, according to the indictment, millions of dollars of U.S. business, was sentenced for her felony gambling conviction, to two years unsupervised probation by United States District Judge Richard Leon in Washington, D.C.

9. In <u>United States v. Haden Ware</u>, Case No. 02-cr-00634-WHP in the Southern District of New York, the Honorable William H. Pauley III, in a case handled by undersigned counsel, sentenced the defendant who had helped run the offshore sportsbook known as the World Sports Exchange (WSE) to six months of probation for his felony conviction. The defendant dealt with payments and collections from U.S. betting customers, as well as general business-related matters at the direction of the business owner.

10. Accompanying Exhibit "A" is a news article concerning a plethora of related cases terminated individually by Information in the Northern District of Texas involving 18 defendants charged with running an illegal gambling business, money laundering, and tax violations in a $5.4 billion gambling operation. Only one of the defendants, the leader of the group who was prosecuted separately in Tyler, Texas, received any jail time; 12 months in custody.

In summary, a close look at the gambling case resolutions set out above reveals that all involved illicit gambling far more extensive than the misdemeanor activity to which Scott Tom has entered his guilty plea. Attached hereto as Exhibit "B" are excerpts from the sentencing memorandum of above-mentioned co-defendant Paul Tate who received a probationary sentence for his felony gambling plea and whose participation with poker/gaming violations persisted until at least 2011, some four years after Scott Tom's resignation upon the passage of UIEGA. Accompanying excerpts (Exhibit "B"), from a study by MCM Data Consulting Company, of the Southern District of New York and other federal districts' sentences for those with offense levels of 8 indicate that 95.4% received probationary sentences nationwide and 100% received probation sentences in the Southern District of New York. Defendant Scott Tom's violation carries an offense level of only one-half that of Mr. Tate and is not a felony.

In view of Scott Tom's affirmative departure from Absolute Poker, his youth and his lack of any criminal past, the fact that his misdemeanor violation took place 10 years in the past without repetition of criminal activity, and his current legitimate employment, it is submitted that such evidences a clear desire to avoid inappropriate behavior and that the chances of recidivism are essentially non-existent.

## VI.   RESTITUTION/FORFEITURE/FINE

Because there are no victims in this matter, restitution is not an issue. As noted in the plea agreement, there is an agreed amount of forfeiture totaling $300,000. The defendant is prepared to immediately provide the Clerk's office with an additional $25,000 towards the forfeiture which counsel currently holds in his trust account.

As noted in numbered paragraph 117 of the presentence report (and in the plea agreement) the Guidelines fine in this case is $250 to $5,000. The presentence

7

report recommends a fine of $2,500.  The defendant voices no objection to this fine which will be paid forthwith along with the mandatory $100 administrative assessment.

## VII.  CONCLUSION

Based on all of the above, it is respectfully requested that the Defendant Scott Tom be sentenced in a non-custodial manner.  He will immediately be removed from the United States (either voluntarily or otherwise).  Neither the United States Attorney's Office nor the U.S. Probation Office is asking that this defendant be placed in custody.  Such seems unnecessary, unproductive, and far out of line with offense level four misdemeanor offenders.  Correspondence to the court from those who know Mr. Tom best is attached as Exhibit "C."  He is described as a man of "remarkable character," as one who has "assisted a number of individuals and organizations that are less fortunate," and as "honest and of good moral standing."  The defendant's own correspondence to the court is attached as Exhibit "D."

Dated:  September 20, 2017          Respectfully submitted,

**LAW OFFICES OF JAMES D. HENDERSON**

By: s/ *James D. Henderson*
JAMES D. HENDERSON
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone:     310-264-1898
Facsimile:      310-264-4755
email:             jdh@hendersonlaw.us
CA State Bar:  104150

Attorney for Defendant SCOTT TOM